to the fifth case this morning. United States v. Jones and Wainsley. All right, Mr. Zales, are you ready to proceed? I am, your honor. Thank you. Go ahead. May it please the court, I am attorney Nick Zales. I represent Marvin Jones, the defendant appellant in this case, and since we are splitting the time, I'm going to focus my arguments on the section 1702 arguments. Joanna Christensen, who is representing Ms. Wainsley, will focus on the conspiracy and bribery charges, although either one of us are able to address any questions you have on any part of the case. As I said in my brief, we are arguing that even assuming that every single fact that the government proved at trial is true, that still the conduct involved does not reach the statute, not a violation of section 1702. And I think one of the main reasons is we rely on the Grieco case, which involved fictitious addressees. In that case, the court held that if you have a fictitious addressee, you can't violate section 1702. And I think it's important to point out that section 1702 is a mail privacy statute. It's designed to keep people's mail private so that people can write to each other without worrying that somebody would open their letter up, copy it, read it, whatever, even put it back into the stream of mail. So as you read section 1702, the key phrase, the person to whom it is directed, do you view that as a subjective test? No. I think it could be objective in as much as that, in this case, we know exactly who the packages were directed to. Oh, okay. Well, it's subjective. I'm talking about the difference between the way the package is addressed and the subjective intent of the sender. Yes. And specifically, do you think the prosecution is required under 1702 to call the sender to testify that I intended the mail to be delivered as addressed? If there was a question as to that, I would agree. I would say yes. Well, is it part of the burden on the government, as you view it, to call the sender to testify, yes, I intended the package or letter to be delivered as I addressed it? Yes, because the sender is the one person who knows. Well, that seems to me to be a wildly impractical requirement, given the very strong presumptions and regulations that mail should simply be delivered as addressed. That is true. I think this case is unusual, and that in this case, we know who the sender was and who they intended it to go to. Does this unusual case change the burden of proof on the prosecution in all cases under 1702 to require proof of the sender's intent over and above the address? I think it can. Okay. I think you judged that as a very good question. When I first looked at this file, I thought there was nothing there. On the surface of it, it seems as if, yes, you have an addressee, didn't get to that person, this violates the statute. The more I looked at it, at the case law and the purpose of the statute, the more I became convinced that Mr. Jones did not violate the statute in this case. Mr. Zales, you're five-minute time. I'll give you another minute in the end, but go ahead. Thank you, Judge. In this case, all the evidence at trial was that the packages were supposed to go to Mr. Smith or one of his associates, and that's where all the packages went to. This language to whom it is directed, that is the question. How do you determine that? An addressee is one way. Actual proof, knowledge that it's going to somebody else is another way. Thank you, counsel. Ms. Christensen. Yes, Your Honor. May it please the court, counsel. My name is Joanna Christensen, and I represent the appellant, Angela Wansley, in this case. As Mr. Zales said, I will be addressing the sufficiency of the evidence on the bribery and conspiracy counts. On Mrs. Wansley's behalf, first, the evidence was insufficient to convict a bribery under 201B2C. The primary holes in the government's case were the lack of evidence of quid pro quo and the lack of evidence that Ms. Wansley acted corruptly. It's clear in this case that Ms. Wansley violated postal regulations, but it is unclear whether she did that quid pro quo to receive payments from Mr. Jones for her participation. As Mr. Jones testified, he gave Ms. Wansley money both during this scheme and prior to this scheme because he was a friend and she was taking care of some relative's children and needed some money. So the purpose, the quid pro quo, is not there. The government did not prove that the money she received from Jones was directly related to the acts in violation of postal code that she did. So Ms. Christensen, I think Lawler, it was Special Agent Lawler and Bellamy who testified about their conversations with Ms. Wansley, is that right? Yes. And she said after she mishandled the parcel, she would receive anywhere between $50 to $100 in cash payment. And on redirect, that Jones paid her cash to, quote, do all this. Was that not sufficient for a jury to infer quid pro quo? I think that certainly, it's certainly evidence that she was getting money at the same time. I know she disputed it. Yeah. This is a sufficiency of the evidence challenge, as I understand it. Right. Why can't a jury infer from that testimony a quid pro quo with respect to Wansley's payments? I think that that could certainly be inferred. It then goes hand-in-hand with the corruptly portion of it. She was basically following directions of her supervisor, which she believed she had to do. So the corruption aspect- Did Special Agent Bellamy testify that she admitted to herself that what she was doing was wrong? Is that- Right. Under the postal regulations, she certainly admitted that. Okay. And I think that she knew that she was violating postal code. The government proved at great length that this was in violation of postal code. But also, there was testimony that this sort of thing happened in real life occasionally. And I think, too, the 1702 argument is that things are supposed to go to whom they're addressed. But we all know through our personal experience that things don't exactly go that way and can be misdelivered. And it happened. So I think that she was following- The crimes, the criminal statutes require knowing action, right? Right. Right. And certainly, in this case, the lack of the direct association with quid pro quo, a stronger association, and also that it be corruptly, I think is where the government's case falters. Regarding the conspiracy charge under 371, the issue in this case is whether she was actually part of that agreement. There was clearly a conspiratorial agreement between Jones and Smith. And there's evidence that Ms. Wansley knew about that agreement and knew at least something was going on because she knew she was violating the postal regulations. But as this court has held, the mere knowledge of a conspiratorial agreement does not mean that she is a part of that agreement. Her text messages indicate that Jones was certainly talking to her about this agreement that he had, and that she doesn't seem overly concerned when things don't go the way the conspiracy is intended to go. Oh, well, that's just chalk it up to the game. It sounds like she's just basically humoring him, discussing what he's doing. So, and again, before I go into my rebuttal time, I argued that she was not guilty of the theft of mail counts. One was dismissed, and one was held not guilty by the jury. And then she also is questionably not guilty of the 1702 counts, which Mr. Zales has argued. So I neglected to make that connection in my brief that it was a dual conspiracy, and there's a lack of evidence as to both of those objects of the conspiracy. So unless the court has further questions, I'll reserve my time for rebuttal. Thank you, Ms. Wilson. Thank you. Mr. Fullerton. Yes, good morning. May it please the court. The court should affirm the convictions of Defendants Jones and Wansley. The jury was properly instructed. There's no argument on appeal that the instructions were erroneous, and the jury could rationally and did rationally find that the defendant's conduct violated these statutes. On the 1702 issue, again, there's no contention that the judge improperly instructed the jury. The jury was required to find that the defendants took out of the mail or out of a post office correspondence or packages that before they had been delivered to whom they were directed. Now, the question that the jury was required to decide in this case was, what did that mean, to whom the packages were directed? The government introduced testimony from a woman named Wesley, who was a post office operations manager, that the postal regulations required mail or correspondence to be delivered to whom they were addressed. That only makes sense. It only makes sense that the postal service would run on an objective a basis and determine the intended recipient of correspondence from the directions written by the sender on the package. Can I just ask you, what happens under 1702 if a letter carrier who's familiar with the route and the residence recognizes an obvious, for example, transposition of numbers in a street address and delivers, in essence, as she is confident the sender would have wanted, even though it's not exactly as addressed? I think there would not be a violation because 1702 requires an intent to obstruct correspondence. And the jury here was instructed on the same thing, that good faith would be a defense to the 1702 violation and the defendants were required to have an intent to obstruct correspondence. In the hypothetical you pose, your honor, the letter carrier would have a defense that they intended not to obstruct correspondence and, in fact, delivered it as intended by the sender. So, the jury was properly instructed. There was plentiful evidence to conclude, for the jury to conclude, that the defendants took these packages out of the mail and delivered them to Smith or Smith's associates and not to the addressees on the packages. In fact, the addressees had been given to Smith or Smith's colleagues in Los Angeles or California without the knowledge of the addressees. These were real addressees, but were not the intended recipients of the correspondence. And, again, the jury was entitled to conclude from this evidence that the defendants did so intended to obstruct the correspondence, that is, without good faith, because, as the evidence showed, the defendants, both Wansley and Jones, knew that their actions were in violation of the postal regulations. Jones evidenced a guilty conscience when he alerted Smith to, for example, he alerted Smith to the existence of the surveillance catwalks at the Tinsley Park Post Office. When he referenced law enforcement, when one of the packages went missing, he said, well, if it, you know, if they knew what was in it, it would turn up as law enforcement. Wansley admitted that she knew that she had done something incorrect. So did Jones. And it's further evidenced by the fact that they required payment to do what they did. They were doing this corruptly in return for payment, violating their duties of their job with the Postal Service. So those constituted 1702 violations. The bribery violation was also supported by the evidence. They were concededly public officials working for the Postal Service. They admittedly violated the duties of their job. And they did so in return for abroad. That is, there was a quid pro quo payment. That was evidenced very clearly in the text messages, for example, between Smith and Jones, where Jones and Smith made it very clear that if Jones wanted to get paid by Smith, he had to go get the packages. Jones also made that clear in his interview with the postal inspectors when he laid out how the scheme went. He said, well, this guy's got a package going to somebody. I take it out. I give it to that person. Then I think his quote was, give me $100. That was clearly a recognition on Jones's part that he was doing this for a quid pro quo. With regard to Wansley, the evidence included Wansley's statement to the postal inspectors who interviewed her that she did as Jones asked her to do in mishandling packages over the course of several months, that she got paid by Jones to do so. And the quid pro quo nature of it is perhaps best evidenced in a couple of text messages between Jones and Smith, in which Jones tells Smith that he intends to go pick up a package that Wansley would otherwise have delivered so that he doesn't have to pay Wansley. Right, but that's not Wansley, right? No, it's a statement of a co-conspirator during the course of the conspiracy that was properly admitted against Wansley. As showing the quid pro quo nature of the conspiracy. Was that ground for admission specifically addressed? I haven't seen that part of the transcript yet. I don't recall that. I would think you'd be on a lot more solid ground relying on evidence about what Wansley herself said. Yeah, I agree. And if there was no objection, however, to that admission, it would be forfeited. It's not plain error to admit it on that ground. But yes, Wansley's admissions to the postal inspectors were sufficient to establish her agreement to violate her postal duties, her duties as a postal employee, in return for the money that she received from Jones. Certainly, the jury was entitled to conclude that given the entire nature of the scheme. That included Wansley's knowledge that Jones and Smith were agreeing or conspiring to do these things, to divert packages from the addressees to Smith, basically in order to evade or fly into the radar of law enforcement. Mr. Fullerton, can I ask you what you think we ought to do with the Grieco case from the Southern District of New York and the fictitious addressees under 1702? Yeah. Well, first, I mean, it's a 60-year-old case from a district court in another circuit, which I don't think has a whole lot of application here. For one thing, in the Grieco case, the addressees were fictitious. This was essentially decoy mail that was got up by the agents or inspectors to see who was stealing mail, and decoy mail was taken by Mr. Grieco. So in that sense, there wasn't correspondence as there was here. Here we have- If we were to follow that path, though, then what we'd be saying if we distinguish Grieco on that basis but affirm these convictions, what we'd be telling potential defendants is just make sure you use false names for real addresses, right? Well- It doesn't sound like a very satisfactory approach to this problem. Yeah, except that part of the scheme here was making sure that the address also didn't come back to Jason Smith. An address, if you send it to Jason Smith's address with a beeper in the package, Jason Smith takes it on behalf of the fictitious person, and then later the beeper goes off showing that somebody has opened the package. It may be a technique that the criminal would not be wise to adopt. But at any rate, here we didn't have fictitious names. We had real names. People testified that, you know, I was Mr. Santos to whom this package was directed. It was not for me. I don't know the guy in California, and I never received it. There's also testimony from, I believe, I guess it was Mrs. Santos who testified, as well as a Mr. Durkin and a Mrs. Kaczmarek to the same effect. So here we have real correspondence addressed to real people that really did go through the mail, that really was accompanied by false and phony entries made by Jones and Wansley into the postal system, the postal information system, about what had happened to the packages. And instead of following the regular course of delivery as required to do, they both diverted the packages and gave them to Smith or Smith's Associates in return for payment. So having said all that, unless there are further questions from the court, we'd ask you to affirm the convictions of both Mr. Jones and Ms. Wansley. Thank you, Mr. Fulton. Mr. Zales? Thank you, Judge. I'd like to touch on a couple of things Attorney Fulton said. First of all, postal regulations. An admission that my client or Ms. Wansley were wrong as to postal regulations, the postal regulations are not part of the statute. They can't be bootstrapped into the statute. I'd like to talk about the Grieco case because I think that that's a very interesting case. It involved mail that was just as real as any other mail. I don't know if there's any requirement that a letter or an envelope or a box have anything in particular in it to qualify it as mail. They addressed this envelope, put money in it, put it into the stream, it got to the hotel. So one thing I would note is the case that the United States submitted yesterday afternoon, United States v. Butler from the Sixth Circuit. It's an unpublished opinion, it's from another circuit. It involved a different issue, but discusses the Grieco case in depth, in particular at the end of Section 2A, the last full paragraph. Grieco has been cited many times by other circuits. None of them has ever criticized its holding that fictitious mail cannot violate the statute. I think, if anything, this 2020 opinion, citing Grieco and discussing it, shows that the case still is viable as persuasive authority. And I would like to conclude that there was no obstruction of mail. Mr. Santos, these other people were never expecting any mail. The people who were expecting the mail all received it. And therefore, I do not see that there can be a violation of the statute if people who are supposed to receive mail receive it. Thank you. Thank you, Mr. Zales. Ms. Christensen? Thank you, Your Honor. I will make an additional note just real quick about 1702. There were fictitious names used in this case. On page 12 of my brief, of Ms. Wansley's brief, Ms. Santos testified that she saw that there were addressed, packages addressed to her address to a Mr. Santos, and a Mr. Santos had never lived there. So this case did involve, and that's one example, did involve fictitious names. So it is fairly close to the Grieco case, which has never been questioned in its 60 years. On to the bribery dispute. So should the difference, should we make the difference between real names and fictitious names, the controlling fact here? I don't think it's the controlling fact, but it's certainly an indication of that these packages could probably not be delivered following post office regulation. The address is right, but the name is not. So what is supposed to happen there and where is the crime if someone does deliver either to the person which it's intended, which the statute addresses, or delivers to the address in which it's addressed? That the postal worker has a conundrum there because one or the other may be incorrect and fictitious. Your example with the transposed numbers, I think, is another example of where is the line here? I'm not sure it's necessarily on the facts, but it does come down to what the intent of the sender was. Do you agree that the subjective test so that the sender should be required to testify? I think it's not necessarily a subjective test. And in this case, of course, the senders did not testify, but the government certainly put on evidence that the intent of the senders was that these packages go to Smith. And I don't think there was anybody who disputed that intent, subjective or objective. So I see that I am out of time. I respectfully request this court reverse and remand. Thank you. Thank you. Thanks to all counsel and the case will be taken under advice.